UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

FILED
RICHARD W. NAGEL
CLERK OF COURT
2022 DEC -5 PM 3: 19

UNITED STATES OF AMERICA,

Plaintiff,

vs.

JIMMY DARYL THOMAS,

Defendant.

CASE NO.

JUDGE

INFORMATION
18 U.S.C. § 1349

FORFEITURE ALLEGATION

**THE UNITED STATES ATTORNEY CHARGES:**

**INTRODUCTION**

At all times relevant to this Information:

*Department of Defense (DOD) Contracting Process*

1. The United States Department of Defense (DOD) contracted through its various agencies, such as the Defense Logistics Agency (DLA). DLA was the United States' combat logistics support agency, and as such managed the global supply chain for all military services, ten combatant commands, other federal agencies, and partner and allied nations. DLA had three primary depots that manage the military's global supply chain – DLA Land and Maritime (L&M) in Columbus, Ohio, DLA Aviation in Richmond, Virginia, and DLA Troop Support (TS) in Philadelphia, Pennsylvania.

2. When the DOD determined that a particular part was needed, the DOD issued "Solicitations," or Requests for Quotation (RFQs) electronically through a web-based application, DIBBS (DLA's Internet Bid Board System). Users (potential contractors) could search for, view, and submit secure quotes based upon the RFQs for the items DLA was looking to obtain. The solicitations (RFQ's) listed the DOD requirements, which could include specified manufacturers

and part numbers, drawings and/or specifications such that any potential contractor is aware of exactly how the part is to be made or the approved source of the part. Contracts, or purchase orders, issued by DLA are typically one of two types: "drawing" contracts or code and part contracts. On a drawing contract, the contractor is required to manufacture a specific part in accordance with specifications identified by DLA in its solicitation and contract. On a code and part contract, the contractor is required to provide DLA a specific part that was manufactured by an approved source, i.e., an exact product; DLA identifies the specific part and approved source(s) in its solicitation and contract. DOD contractors were required to have a quality control system in place to ensure the parts supplied to the DOD are in accordance with DOD specifications. This is especially important when a contract calls for a Critical Application Item (CAI). CAIs are items on a U.S military weapon system that are essential to the weapon's performance, operation, and/or the preservation of life or safety of operating personnel.

3. On code and part contracts, the contractor's bid for each contract contains the following notice, in part, regarding a contractor's representation that it will provide an exact product: "Any product not meeting these criteria is considered an alternate product even though it may be manufactured in accordance with the drawings and/or specifications.... (see DLAD 52.217-9002). To confirm the technical acceptability of your exact product quote, we may request documents (e.g., invoice, quote, agreement) to show traceability... Failure to provide adequate traceability upon request may result in the rejection of your quote as technically unacceptable. Any indication that you have misrepresented the product offered shall result in the Government considering rescission of any resultant contract and all other sanctions, contract penalties, and remedies established under any other law or regulation."

4. To conduct business with the DOD, contractors must register in the System for Award Management (SAM), to include providing an email address, and agree to receive payments electronically. The contractors must also obtain a Commercial and Government Entity (CAGE) code. The CAGE code is a 5-character identification number used extensively within the federal government, assigned by the DLA. The CAGE code was used to support a variety of mechanized systems throughout the government and provides a standardized method of identifying a given contractor facility at a specific location.

5. In the contracting process, once parts are shipped to the DLA, contractors enter the shipping and invoicing information electronically, through a secure, web-based system, which allows the government to receive and pay electronically. Upon receiving the invoice, which also represents that the contractor is providing goods in conformance with the contract requirements, the DOD, through the Defense Finance and Accounting Service (DFAS), located in Columbus, Ohio, within the Southern District of Ohio, issued electronic payment to the supplying contractor and retained a voucher as a record of the payment.

6. DLA L&M in Columbus was also home to laboratories used to test and identify nonconforming parts sold to DLA, including the capability to test for counterfeit material, substitute inferior products, remark/over brand items, aftermarket and alternate products. These laboratories at DLA L&M were used to test all suspect parts provided to DLA worldwide.

*The Defendant and Parts Source International Inc.*

7. The defendant, **JIMMY DARYL THOMAS** (hereinafter, "**THOMAS**"), resided in White House, Tennessee.

8. T.F. was the co-owner and operator of Parts Source International Inc. ("Parts Source") in Goleta, California. On November 18, 2001, Parts Source was initially registered in

the federal government's Central Contractor Registry (CCR), which was the predecessor to the SAM. When the federal government launched the SAM in 2013, the data from the CCR was migrated into the SAM.

## COUNT 1
(Wire Fraud Conspiracy)

9. Paragraphs 1 – 8 of this Information are re-alleged and incorporated by reference as though set forth in full herein.

10. Beginning as early as 2015 and continuing until at least 2019, in the Southern District of Ohio and elsewhere, the defendant, **JIMMY DARYL THOMAS**, knowingly conspired and agreed with T.F. to commit wire fraud, that is, to devise and intend to devise a scheme to defraud to deprive another, specifically, the DOD, of money and property by means of material misrepresentations and concealment of a material facts, and for the purpose of executing the scheme, used wire communications in interstate commerce, in violation of 18 U.S.C. § 1343.

### The Object of the Conspiracy

11. The object of the conspiracy was for the defendant and others to unlawfully enrich themselves by providing the DOD and the United States Military nonconforming parts in response to at least 29 Purchase Orders awarded to Parts Source. As a result of **THOMAS'** involvement in the conspiracy to defraud and to deprive another of money, the DOD suffered a loss of approximately $219,476.48.

### Manner and Means of the Conspiracy

12. It was part of the scheme to defraud that:

a. T.F. quoted, or bid on, "code and part" contracts that required Parts Source to provide a specific part, often a CAI, that was manufactured by an approved source as specified

4

by DLA in the contract. In these quotes, T.F. represented that he would provide the "exact product" as requested.

        b.     Instead of purchasing the required parts per the Purchase Order, or contract, requirements, T.F. purchased aftermarket or replacement parts from unapproved sources, including through **THOMAS**, who sourced the parts.

        c.     In anticipation of requests by DLA for documentation as to the traceability, or origin, of a particular part, whether pre-award or post-award of a contract, T.F., with the help of **THOMAS**, prepared false and misleading quotations and invoices that purported to show that T.F. purchased the correct parts and thus, DLA would receive the parts required by the contract.

        d.     When shipping the parts to the DOD, T.F. used packaging, some of which was prepared and provided by **THOMAS**, that contained markings indicating they were the required parts per the contract.

        e.     To receive payment, T.F. electronically invoiced DFAS representing that the parts provided were in accordance with the contract, or purchase order, requirements.

        f.     Upon receipt of the funds from DFAS, T.F. used a portion of those funds to pay vendors, including **THOMAS**, for the non-conforming parts or for his assistance with false invoices and labels.

**In violation of 18 U.S.C. § 1349.**

## **FORFEITURE ALLEGATION**

13.    The allegations of this Information are hereby realleged and by this reference fully incorporated herein for the purpose of alleging forfeitures to the United States of America under 18 U.S.C. § 981 and 28 U.S.C. § 2461(c).

14. Upon conviction of the offense alleged in Count 1 of the Information, in violation of 18 U.S.C. § 1349, Defendant **JIMMY DARYL THOMAS** shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to such offense, including, but not limited to, a sum of money equal to $149,196.61 in United States currency.

15. <u>Substitute Assets</u>: If any of the forfeitable property described above, as a result of any act or omission of Defendant **JIMMY DARYL THOMAS**:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States of America, pursuant to 21 U.S.C. § 853(p), 28 U.S.C. § 2461(c), to seek forfeiture of any other property of Defendant **JIMMY DARYL THOMAS** up to the value of the forfeitable property.

**Forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c), and Rule 32.2 of the Federal Rules of Criminal Procedure.**

**KENNETH L. PARKER**
**UNITED STATES ATTORNEY**

*/s/ Jessica W. Knight*
**JESSICA W. KNIGHT, (0086615)**
**Assistant United States Attorney**
**J. MICHAEL MAROUS (0015322)**
**Special Assistant United States Attorney**